IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO: |
| | ) | |
| CITY OF BAINBRIDGE, GEORGIA and | ) | |
| AALIYAH JACKSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, Plaintiff Markel Insurance Company ("MIC") for its Complaint for Declaratory Judgment against the Defendants and alleges as follows:

## **INTRODUCTION**

1.

This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of resolving an actual controversy between MIC and Defendant City of Bainbridge, Georgia, (the "City") arising out of insurance policies MIC issued to the City. In this action, MIC seeks a declaration that it has no obligation to defend and indemnify the City in connection with the underlying lawsuit filed against the City by Defendant Aaliyah Jackson ("Jackson") concerning injuries Jackson allegedly sustained as the result of a natural gas leak on April 28, 2025.

## **THE PARTIES**

2.

Markel Insurance Company is an Illinois corporation with its principal place of business located at Rosemont, Illinois, and is duly authorized to transact business in the State of Georgia.

3.

Defendant City of Bainbridge, Georgia, is a municipal corporation created pursuant to the laws of the State of Georgia and is a body corporate subject to suit. The City may be served through its Mayor, Sylvia Washington, or City Manager, Roy Oliver, at 101 South Broad Street, Bainbridge, Decatur County, Georgia 39818.

4.

Defendants Aaliyah Jackson is a citizen of the State of Georgia residing in Bainbridge, Georgia. Jackson can be served at her residence located at 710 Gordon Avenue, Apartment H30, Bainbridge, Decatur County, Georgia 39819.

## JURISDICTION AND VENUE

5.

There is complete diversity between MIC, on the one hand, and all of the Defendants, on the other hand.

6.

The amount in controversy exceeds $75,000, exclusive of interest and costs, because Jackson demanded $3,000,000 from the City to settle the claims that are the subject of this lawsuit.

7.

Thus, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.

8.

This Court has personal jurisdiction over all defendants because they all reside in Georgia and are citizens of the State of Georgia.

9.

Venue is proper in the Middle District of Georgia, Albany Division, pursuant to 28 U.S.C.

§§ 1391(b)(1) and/or (2) because a substantial part of the events or omissions giving rise to this

lawsuit occurred in and/or at least one of the Defendants reside in Decatur County, Georgia, which

is one of the counties that comprises the Albany Division.

10.

This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of

a ripe and justiciable nature exists between MIC and the City involving whether MIC has a duty

to defend and indemnify the City for Jackson's claims against the City in the subject underlying

lawsuit.

## FACTS

11.

The City provides natural gas utility service through its Natural Gas Department.

12.

The City provides natural gas utility service to the Landmark Manor Apartments located at

710 Gordon Avenue, Bainbridge, Decatur County, Georgia 39819 ("Landmark Manor").

13.

On April 28, 2025, members of the City's Public Safety Department's Police and Fire

Divisions were dispatched to respond to an E911 call concerning a burn victim at Apartment H30

of Landmark Manor ("Apartment H30").

14.

The responding police officers observed Jackson as the subject burn victim.

15.

Jackson reported to the responding police officers that she sustained burns in one of Apartment H30's bathrooms after attempting to light a cigarette (the "Incident").

16.

The firefighter responding to the Incident observed signs of heat and fire damage in and around the bathroom Jackson was occupying at the time of the Incident.

17.

On April 29, 2025, members of the City's Public Safety Department's Police and Fire Divisions and Natural Gas Department were dispatched to respond to a report of a possible natural gas leak outside Landmark Manor's Building H (the "Leak").

18.

The Leak was reported by Landmark Manor's maintenance personnel who reported they smelled natural gas outside the rear of Building H.

19.

Landmark Manor's Building H includes Apartment H30.

20.

The members of the City's Public Safety Department responding to the Leak evacuated Building H.

21.

The members of the City's Natural Gas Department responding to the Leak detected the presence of natural gas in Apartments H30, H31, and H32.

22.

The members of the City's Natural Gas Department responding to the Leak observed that

the natural gas for Apartment H30 had been turned off at the meter.

23.

The members of the City's Natural Gas Department responding to the Leak discovered a split in a natural gas pipe behind Building H.

24.

The split in the natural gas pipe behind Building H was caused by root growth.

25.

The members of the City's Natural Gas Department responding to the Leak replaced the section of natural gas pipe split by root grown behind Building H.

26.

The replacement of the section of natural gas pipe split by root grown behind Building H resolved the Leak.

27.

On April 29, 2025, the Chief of the City's Public Safety Department's Fire Division requested that the police officers responding to the Incident provide an incident report. A true and correct copy of that incident report produced by the City in the subject underlying lawsuit is attached as Exhibit A.

28.

On May 29, 2025, Jackson, through counsel, sent an *ante litem* notice pursuant to O.C.G.A. § 36-33-5 to the City (the "*Ante Litem* Notice"). A true and correct copy of the *Ante Litem* Notice is attached as Exhibit B.

29.

The *Ante Litem* Notice asserts the City's liability for the Incident due to a natural gas leak.

30.

The *Ante Litem* Notice asserts that a natural gas leak from the City's natural gas lines permitted natural gas to enter Apartment H30 where Jackson accidentally ignited it, causing her burn injuries.

31.

The City received the *Ante Litem* Notice on May 30, 2025.

32.

The City anticipated litigation with respect to the Incident upon receipt of the *Ante Litem* Notice.

33.

On July 2, 2025, Jackson filed suit against the City and others in the Superior Court of Decatur County, Georgia, in an action captioned *Aaliyah Jackson v. City of Bainbridge, et al.*, Civil Action No. 25CV00139 (the "Underlying Lawsuit"). A true and correct copy of the Complaint in the Underlying Lawsuit is attached as Exhibit C.

34.

The Underlying Lawsuit asserts the City's liability for the Incident due to a natural gas leak.

35.

The Underlying Lawsuit asserts claims against the City for negligence and nuisance. (Ex. C ¶¶ 45-62.)

36.

The Underlying Lawsuit alleges the City is the natural gas utility provider for Landmark Manor. (*Id.* at ¶ 26.)

37.

The Underlying Lawsuit alleges a natural gas leak occurred at Landmark Manor on or around April 28, 2025. (*Id.* at ¶ 25.)

38.

The Underlying Lawsuit alleges fugitive natural gas entered Apartment H30. (*Id.* at ¶¶ 27-28.)

39.

The Underlying Lawsuit alleges Jackson ignited fugitive natural gas in Apartment H30 when she activated a lighter. (*Id.* at ¶ 28.)

40.

The Underlying Lawsuit alleges Jackson sustained burn injuries as a result of the ignition of fugitive natural gas in Apartment H30. (*Id.* at ¶ 29.)

41.

The Underlying Lawsuit alleges the City had actual and/or constructive knowledge of defects in the natural gas system at Landmark Manor. (*Id.* at ¶¶ 30, 34, 50, 55.)

42.

The Underlying Lawsuit alleges the City failed to warn Jackson of the defects in the natural gas system at Landmark Manor. (*Id.* at ¶ 33.)

43.

The Underlying Lawsuit alleges the City breached its duty to Jackson to install, repair, and/or maintain the natural gas system at Landmark Manor. (*Id.* at ¶¶ 36, 48-49, 51.)

44.

The Underlying Lawsuit alleges the defects in the natural gas system at Landmark Manor

were a nuisance hazardous to Jackson's safety. (*Id.* at ¶¶ 54, 59.)

45.

The Underlying Lawsuit alleges the City knew the defects in the natural gas system at Landmark Manor were a nuisance hazardous to Jackson's safety. (*Id.* at ¶¶ 54-59.)

46.

The Underlying Lawsuit alleges the City breached its duty to correct and eliminate the hazard created by the defects in the natural gas system at Landmark Manor by failing to adequately install, repair, and/or maintain the natural gas system at Landmark Manor. (*Id.* at ¶¶ 57-58.)

47.

The Underlying Lawsuit alleges the City's "misfeasance rose to a level exceeding that of negligence." (*Id.* at ¶ 60.)

48.

The Underlying Lawsuit seeks punitive damages. (*Id.* at ¶¶ 63-64.)

49.

The Underlying Lawsuit seeks attorneys' fees under O.C.G.A. § 13-6-11. (*Id.* at ¶¶ 65-67.)

50.

On July 11, 2025, Jackson served the City with process in the Underlying Lawsuit. A true and correct copy of the Proof of Service on the City in the Underlying Lawsuit is attached as Exhibit D.

51.

On September 8, 2025, the City forwarded a copy of the *Ante Litem* Notice to MIC.

52.

September 8, 2025, was the first time MIC was made aware of the Incident, Leak, and *Ante*

*Litem* Notice.

53.

On or about September 15, 2025, MIC received a copy of the Offer of Settlement Jackson served on the City in the Underlying Lawsuit.

54.

September 15, 2025, was the first time MIC was made aware of the Underlying Lawsuit.

55.

MIC is participating in the City's defense in the Underlying Lawsuit pursuant to a full reservation of rights.

## **THE POLICIES**

56.

MIC issued commercial lines policy number AWUP000158-4 to the City for the October 23, 2024 to October 23, 2025 policy period (the "Primary Policy"). A certified copy of the Primary Policy is attached hereto as Exhibit E.

57.

MIC issued excess/umbrella policy number AWUE000158-4 to the City for the October 23, 2024 to October 23, 2025 policy period (the "Excess Policy," collectively, with the Primary Policy, the "Policies"). A certified copy of the Excess Policy is attached hereto as Exhibit F.

### **The Primary Policy**

58.

The Primary Policy has limits of $1,000,000 each "occurrence," $2,000,000 general aggregate limit.

59.

The Primary Policy contains a commercial general liability coverage part subject to a

Commercial General Liability Coverage Form (CG 00 01 04 13).

60.

The Primary Policy's insuring agreement for Coverage A – Bodily Injury and Property

Damage provides, in pertinent part, as follows:

**SECTION** I – **COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   * * * *

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

   * * * *

(Ex. E at MIC000031.)

61.

The endorsement entitled Limitation of Coverage to Designated Premises, Project or

Operation (CG 21 44 04 17) modifies the Primary Policy's insuring agreement for Coverage A –

Bodily Injury and Property Damage, in pertinent part, as follows:

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project Or Operations:**<br>Natural Gas Distribution Utility Operations or Projects Only |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

    **1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

        **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

            **(1)** The "bodily injury" or "property damage":

* * * *

                **(b)** Arises out of the project or operation shown in the Schedule;

* * * *

(*Id.* at MIC000048.)

62.

The Primary Policy contains the following definition relevant to its insuring agreement for Coverage A – Bodily Injury and Property Damage :

    **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(*Id.* at MIC000045.)

63.

The Primary Policy's insuring agreement for Supplementary Payments – Coverages A and B provides, in pertinent part, as follows:

- 11 -

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

\* \* \* \*

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

\* \* \* \*

(*Id.* at MIC000038.)

64.

As amended by the endorsement entitled Commercial General Liability Plus Enhancement (MGL 1242 03 14), the Primary Policy contains the following Expected or Intended Injury Exclusion:

[This insurance does not apply to:]

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

(*Id.* at MIC000062.)

65.

As amended by the endorsement entitled Pollution Exclusion – Named Peril Limited Exception for a Short-Term Pollution Event (MGL 1357 04 20), the Primary Policy contains the following Pollution Exclusion:

**A.** Exclusion **f.** in Paragraph **2.** Exclusions under Section **I** – Coverages, Coverage **A** – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

\* \* \* \*

**(iv)**"Bodily injury" or "property damage" arising out of a "short-term pollution event" provided the "short term pollution event" would not have taken place but for a "named peril" having occurred, and you notified us of the "short-term pollution event" as soon as practicable but no more than 60 days after its ending.

\* \* \* \*

**B.** The following definitions are added to the Definitions section:

"Named Peril" means:

**a.** Lightning, windstorm or earthquake;

**b.** Explosion, implosion, collapse, puncture, bursting, rupture, collision, or overturn of a tank, a vessel, machinery, equipment, or other similar apparatus or device (other than an "auto"), including any attached piping, pumps or valves, if the explosion, implosion, collapse, puncture, bursting, rupture, collision, or overturn is not caused by deterioration, corrosion, erosion, decay, rotting or wear and tear; or

**c.** Vandalism or malicious mischief by someone other than an insured.

"Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

**a.** Begins during the policy period;

**b.** Begins at an identified time and place;

**c.** Ends, in its entirety, at an identified time within 48 hours of the beginning of the discharge, dispersal, release or escape of the "pollutants"; and

    **d.**  Does not originate from an "underground storage tank".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions **a.** through **d.** of this definition to be considered a "short-term pollution event".

\* \* \* \*

(*Id.* at MIC000077-79.)

66.

The Primary Policy contains the following definition relevant to its Pollution Exclusion:

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.* at MIC000045.)

67.

Coverage under the Primary Policy is subject to certain conditions precedent. Among those is the condition precedent to provide timely notice contained in the Duties In The Event Of Occurrence, Offense, Claim Or Suit, which provides, in pertinent part, as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \* \*

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the

"occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\* \* \* \*

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

\* \* \* \*

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

\* \* \* \*

(*Id.* at MIC000041.)

68.

The endorsement entitled Commercial General Liability Plus Enhancement (MGL 1242 03

14) modifies the Primary Policy's condition precedent to provide timely notice as follows:

\* \* \* \*

**O. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT**

The following is added to Condition **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit under Section **IV** – Commercial General Liability Conditions:

> Your obligation to notify us as soon as practicable of an "occurrence", offense, claim or "suit" is satisfied if you send us written notice as soon as practicable after any of your "executive officers", directors, partners, insurance managers or legal representatives become aware of or should have become aware of such "occurrence", offense, claim or "suit".

* * * *

(*Id.* at MIC000069.)

69.

The Primary Policy contains the following definition relevant to its condition precedent to provide timely notice:

> **6.** "Executive officer" means a person holding any of the officers positions created by your charter, constitution, bylaws or any other similar governing document.

(*Id.* at MIC000043.)

**The Excess Policy**

70.

The Excess Policy has limits of $1,000,000 each "occurrence," $1,000,000 general aggregate limit, with a $10,000 each "occurrence" self-insured retention.

71.

The Excess Policy's declarations state the Excess Policy provides "Excess Liability coverage only." (Ex. F at MIC000100.)

72.

The Schedule of Underlying Insurance in the Excess Policy's declarations identifies the Primary Policy. (*Id.* at MIC000101.)

73.

The Excess Policy's insuring agreement for excess liability coverage provides as follows:

**SECTION I - EXCESS LIABILITY COVERAGE**

**1. Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury", "property damage" and "personal and advertising injury" covered by the "underlying insurance".

Except as specifically provided in this policy, insurance afforded by Excess Liability Coverage is subject to definitions, terms, conditions, exclusions and limitations contained in the "underlying insurance" except any definition, term or condition relating to:

**a.** Transfer Of Rights Of Recovery Against Others To Us (Subrogation);

**b.** Other Insurance;

**c.** Supplementary Payments and obligation to investigate or defend;

**d.** Amounts of insurance; or

**e.** Limits Of Insurance.

(*Id.* at MIC000103.)

74.

The Excess Policy contains the following definitions relevant to its insuring agreement for

excess liability coverage :

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * * *

**26.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance.

(*Id.* at MIC000126, 128.)

75.

The Excess Policy's insuring agreement for supplementary payments provides, in pertinent

part, as follows:

**SECTION III - SUPPLEMENTARY PAYMENTS APPLICABLE TO SECTIONS I AND II**

If a claim is made or "suit" is brought for damages covered under Excess Liability Coverage or Umbrella Liability Coverage to which no "other insurance" applies, the following shall apply:

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

* * * *

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

* * * *

(*Id.* at MIC000111.)

76.

The Excess Policy contains the following Punitive Damages Exclusion:

**SECTION IV - EXCLUSIONS APPLICABLE TO BOTH SECTION I AND SECTION II**

Excess Liability Coverage and Umbrella Liability Coverage do not apply to:

* * * *

**14. Punitive Damages**

   Punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties. This exclusion does not apply if disallowed by statute.

* * * *

(*Id.* at MIC000112, 116.)

77.

As amended by the endorsement entitled Total Pollution Exclusion With A Building

Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception (MUB

1328 03 14), the Excess Policy contains the following Total Pollution Exclusion:

> Exclusion **5. Pollution** under Section **IV** – Exclusions Applicable To Both Section I And Section II is replaced by the following:
>
> **Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception**
>
> **a.** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> * * * *

(*Id.* at MIC000131.)

78.

The Excess Policy contains the following definition relevant to its Pollution Exclusion:

> **17.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.* at MIC000126.)

79.

Coverage under the Excess Policy is subject to certain conditions precedent. Among those

is the condition precedent to provide timely notice contained in the Duties In The Event Of

Occurrence, Offense, Claim Or Suit, which provides, in pertinent part, as follows:

> **SECTION VII – CONDITIONS**
>
> * * * *
>
> **3.  Duties In The Event Of An Occurrence, Offense, Claim Or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\* \* \* \*

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

\* \* \* \*

(*Id.* at MIC000119-120.)

## <u>CAUSE OF ACTION</u>
(Declaratory Relief)

80.

MIC hereby incorporates by reference all allegations contained in Paragraphs 1 – 79 as if fully set forth herein.

81.

MIC does not have any obligation to defend or indemnify the City for any damages, losses, claims, costs, or expenses arising out of or related to the claims asserted in the Underlying Lawsuit on numerous grounds, including, but not limited to, that:

(a)    The City breached the Policies' conditions precedent to provide timely notice such that the City is barred from recovery under the Policies;

(b)    The Underlying Lawsuit does not seek "damages because of 'bodily injury' . . . caused by an 'occurrence'";

(c)    The Policies' insuring agreements for supplementary payments do not apply; and

(d)    One or more of the exclusions contained in the Policies apply, including, but not limited to, the Expected or Intended Injury Exclusion, Pollution Exclusion, Punitive Damages Exclusion, and Total Pollution Exclusion.

82.

Therefore, MIC seeks a declaration that it has no duty to defend or indemnify the City for the Underlying Lawsuit.

WHEREFORE, MIC demands judgment as follows:

A.    For a declaration that MIC has no duty to defend, indemnity, or reimburse the City or otherwise pay for any damages, losses, claims, costs, or expenses arising out of the claims asserted against the City in the Underlying Lawsuit;

B.    That the judgment be binding on Jackson;

C.    For the cost of this suit; and

D.    For such other and proper relief as this Court may deem just and proper.

Respectfully submitted this 21st day of January, 2026.

**LEWIS BRISBOIS BISGAARD &**
**SMITH** LLP
600 Peachtree Street NE
Suite 4700
Atlanta, Georgia 30308
Telephone: 404.348.8585
Facsimile: 404.467.8845
seth.friedman@lewisbrisbois.com
christopher.meeks@lewisbrisbois.com

By: */s/ Christopher C. Meeks*
SETH FRIEDMAN,
Georgia Bar No. 141501
CHRISTOPHER MEEKS,
Georgia Bar No. 371020

*Attorneys for Plaintiff*
*Markel Insurance Company*